JoNES, Chief Judge,
delivered the opinion of the court:
This is a suit by plaintiff, a preference eligible undbr section 14 of the Veterans’ Preference Act of 1944, 58 Stat., 387, as amended, to recover back salary for the period following his alleged illegal removal from his position with the Department of the Army and until his restoration to the position from which he had been removed.
According to the pleadings and admissions plaintiff performed honorable Service in the Army from February 17, 1943, to January 1945.
On June 12,1946, plaintiff received what is termed an excepted appointment as equipment engineer with a base salary of $5,905.20 per annum, plus an overseas differential of 25 percent.
The job was under the Supreme Command Allied Powers in Japan and was authorized pursuant to requisition. Plaintiff left the City of Washington on August 18, 1946, following his appointment. Upon his arrival in Japan he took up his duties.
On August 21, 1947, plaintiff was advised in writing by the Acting Assistant Adjutant General that he was being separated from his position as equipment engineer on the ground that he had failed to cooperate with his superiors, that he did not pass personal knowledge on to his subordinates, and had refused to respect deadline dates; that after completion of a 10-month trial period he had proved to be unsatisfactory.
Plaintiff requested a chance to appeal to higher authority concerning the charges made. On August 27, 1947, an efficiency rating committee of the Headquarters Eighth Army met with plaintiff to discuss the efficiency rating given him for the period August 19, 1946, to June 19, 1947. The committee decided that the efficiency rating would stand as unsatisfactory, but that plaintiff would stay on the job until September 21,1947, the expiration date of his contract in Japan.
*210 On September 1,1947, plaintiff sailed from Yokohama and after arrival in the United States, he, on November 29,1947, directed a letter to the Secretary of the Army in which he related the events which led up to the notice of dismissal. He requested the removal of the unsatisfactory efficiency rating from his file, which was subsequently denied. Effective December 7, 1947, plaintiff was separated from the Department of the Army.
Plaintiff appealed to the Civil Service Commission by letter dated September 9, 1948, some months after the time of'his dismissal. The Commission, under authority of section 22.8 of its regulations which allows it to consider untimely appeals, accepted plaintiff’s appeal, and by letter dated December 10, 1948, notified plaintiff that it had found that he had not been sufficiently advised of the charges placed against him, and that as a result thereof his dismissal was procedurally defective. It was also stated in the letter that it had been recommended that plaintiff be restored to the position from which he was removed, effective December 7, 1947, and that such recommendation would become final unless the Department of the Army submitted an appeal within seven days. The Department of the Army did not exercise its right of appeal, and subsequently, effective February 12, 1949, plaintiff was restored to his position with the Army. He brings suit for his salary for the period between his dismissal and his restoration, plus 25 percent overseas differential, less amounts which he received from other employment during such period.
In accordance with our decisions in the cases of Green v. United States, 124 C. Cls. 186, O'Brien v. United States, 124 C. Cls. 655, Garcia v. United States, 123 C. Cls. 722, and Mendez v. United States, 119 C. Cls. 345, plaintiff is entitled to recover at his base compensation rate for the period November 8, 1947, to February 11, 1949, less the amount of his earnings from other sources for such period.
Defendant concedes that if the principles laid down in the cited decisions are followed the plaintiff is entitled to recover on that basis.
The primary issue to be decided is whether plaintiff is also entitled to receive the 25 percent overseas differential which' was being paid him during his service abroad.
*211 - Plaintiff contends that because he was drawing the overseas additional allowance at the time of his dismissal he should be restored on that basis. The defendant contends that since he was not abroad during the period of his dismissal he is not entitled to the additional compensation allowed to overseas employees.
The various provisions included in legislative and appropriation bills and the executive orders issued from time to time in connection with overseas service indicate the reasons for allowing the additional compensation. For example, section 207 of the Independent Offices Appropriation Act of 1949, as amended,[1] stipulated that any appropriation or funds available for additional compensation based on living costs substantially higher than in the District of Columbia, or conditions .of environment which differ substantially from conditions of environment in the states shall be available where one or both of such factors are present.
Under Executive Order No. 10000 dated September 16, 19,48,[2] the President directed the Secretary of State to fix additional compensation rates, as well as the foreign areas to which they applied, limited, however, by the order to the establishment of a foreign post differential “when and only when, the place involves any one or more of the following: (a) extraordinarily difficult living conditions, (b) excessive physical hardships, or (c) notably unhealthful conditions.”
The order further stipulated that payments should begin as of the date of arrival at the post on assignment, and should stop as of departure from the post for separation, transfer or detail, except that in case of local recruitment payment should begin and stop as of the beginning and end of the employment.
We agree with the position taken by the defendant. Every provision of law and every executive order which we have been able to find which bears upon this subject indicates that the reason for the differential is either the increased expense of living abroad, or the difference in environment involving physical hardship, health or extraordinarily difficult living conditions.
*212 Plaintiff was abroad not a single day during the period for which he is claiming the additional compensation. All the reasons, therefore, for allowing the additional compensation are removed from the case, and this portion of the claim is left hanging on a bare technicality.
The litigants have agreed on the amount which plaintiff is entitled to recover at the basic salary rate, and also the amount which he is entitled to recover if he is allowed the 25 percent differential. They have also agreed upon the amount which plaintiff earned from other sources during the period of the claim.
In accordance with these stipulations plaintiff is entitled to recover the sum of $4,711.58.
It is so ordered.
Madden, Judge; Whitaker, Judge; and Littleton, Judge, concur.
FINDINGS OF FACT
The facts as stipulated by the parties, and approved by the court, are as follows:
1. Plaintiff is a naturalized citizen of the United States and a resident of the District of Columbia.
2. On June 12, 1946, plaintiff received and accepted an excepted appointment of Equipment Engineer (Dial-Auto) P-5 with a base annual salary of $5,905.20 and an overseas differential of $1,476.30. The job was under the Supreme Command Allied Powers in Japan and was authorized pursuant to Requisition 485 on May 17, 1946. On August 18, 1946, plaintiff left the city of Washington on this job.
3. Plaintiff arrived in Japan and took up his assigned duties under the Supreme Command Allied Powers. On August 21,1947, plaintiff received a letter from a Major Ray E. Stoltz, Acting Assistant Adjutant General, which stated as follows:
1. You are being separated from your position as Equipment (Dial) Engineer, P-5, $7381.50 p/a, effective this date due to maladjustment which has rendered you noneffective in the service. You have failed to cooperate with your superiors; you do not pass personal knowl *213 edge on to subordinates; and you have refused to respect deadlines dates. After completion of your ten-month trial period, you have proven to be unsatisfactory.
■ 2. Any reply you care to make to these statements : must be made within five (5) days in writing.
4. On August 25,1947, plaintiff replied to Major Stoltz’s letter as follows:
.. 1. It is requested that the action proposed in the basic letter be reconsidered.
2. The undersigned has been in the U. S. Govt. Service for over ten years of which two years was spent on active duty as commissioned officer with the U. S. Army serving both in the ZI and overseas. During all those years, as well as during his recent service with the FEO, nothing has occurred which could have justified the conclusions stated in the basic letter.
3. The undersigned is not familiar with any correspondence, documents, or any other data in support of the proposed action. He would therefore, appreciate it, if all information pertinent to this matter was submitted to him in order that he may know the nature of the charges, and have a fair chance to prepare a defense. “Unsatisfactory” efficiency rating I would like to appeal.
5. On August 30, 1947, an efficiency rating committee of the Headquarters Eighth Army met with plaintiff to discuss the “unsatisfactory” efficiency rating given plaintiff for the period August 19, 1946, to June 19, 1947. The decision of the efficiency rating committee was that “the efficiency rating would stand as unsatisfactory and Mr. Kalv would stay on his job until 21 September 1947, the expiration date of his contract in Japan.”
6. Under date of August 30, 1947, Maj. Marshall J. Pujo, “By Command of Lieutenant General Eichelberger,” directed the following “Letter Order” to plaintiff:
1. Under auth of the Secretary of War dtd 1 Jul 45, the above named WD civ employee having been reld of dy is dir to proceed fr Yokohama, Japan by surface trans to a US POD. Upon arr US POD subject employee will rpt to OOP to obtain rail trans at govt expense to Washington, D. C. * * *. Indiv will rpt to Trp Movement Off, 2d Trans Maj Port, APO 503 o/a 30 Aug 47 for trans to US POD.
*214 7. On September 7,1947, plaintiff sailed from Yokohama, •Japan, for the United States. He arrived at Seattle, Washington, September 18,1947, and went to San Francisco, California, where he was confined in a Veterans Hospital from September 29,1947, to October 7,1947.
8. On November 29, 1947, plaintiff appealed by letter to the Secretary of the Army and concluded the eight' page appeal with a request thqt the “unsatisfactory” efficiency rating be removed from his personnel file in the Department.
9. On December 7, 1947, plaintiff was separated from Department of the Arniy by War Department Report of Personnel Action, dated December 2,1947, which read as follows:
This is to notify you of the following action concerning your employment, which'is subject to the provisions on the reverse hereof. The form is an official record of your service history in the War Department and should be retained for future reference.
* * * * *
Final salary payment made by Hq. 520th AAF. Base ■ Unit, Washington 25, D. C., in accordance with CPR 150.5, as amended.
Reason: Disqualification.
. 10. On December 15, 1947, Mr. A. H. Outbank, Director, Civilian Personnel, acknowledged plaintiff’s letter of November 29 to the Secretary of the Army and advised plaintiff that “under existing regulations certain records pertaining to an employee’s record of employment in the Federal Service must be retained permanently in the employee’s file. . An efficiency rating report under which an official action is based is deemed to be a document requiring such retention and therefore cannot be removed.”
11. On September 8, 1948, the plaintiff appealed to the Civil Service Commission by letter in which he stated that he had never been advised by the Department of the Army of his right to appeal to the Commission. In view of this fact the appeal of the plaintiff was accepted although it was submitted to the Commission approximately nine months subsequent to the date of the adverse action.
12. On December 10,1948, plaintiff received the following letter from the Civil Service Commission granting his appeal:
*215 There is transmitted herewith a copy of my findings on yóur appeal under Section 14 of the Veterans’Preference Act of 1944, as amended, recommending your restoration to the position with the department of the Army, Headquarters Eighth Army, from which you were removed, effective December 7, 1947.
The Department of the Army, Headquarters Eighth Army, has been requested to advise me within seven days of the receipt of my letter to the Department recommending your restoration, of the action taken or proposed to be taken with respect to such recommendation. The Department has been further advised that in the event that it does not contemplate submitting an appeal within seven days, the finding will become the final recommendation of the Commission and under Public Law 325, 80th Congress, approved August 4,1947, it becomes mandatory for the Department to take the corrective action recommended.
With reference to your appeal under Section 14 relative to your removal from the Department of the Air Force, this office would appreciate being advised by return mail as to whether you desire to continue the appeal at the present time and, if so, whether you request a hearing in connection therewith.
13. On February 9,1949, plaintiff was ordered back to the job from which he was separated in December 1947.
14. Plaintiff left Washington, D. C., on February 14,1949, and left Alameda Airfield, California, on February 26, 1949. On March 3,1949, plaintiff arrived in Japan.
15. On January 31, 1949, plaintiff appealed to the Comptroller General as follows:
Attached I submit a copy of the Findings and recommendations of the Chief Law Officer of the Civil Service Commission on my appeal dated 9 September 1948 of my removal from the position of Equipment (Dial) Engineer, P-5, at $7,381.50 including 25% overseas pay, with the Signal Section, Headquarters 8th Army in Japan, A. P. O. 343 % Postmaster, San Francisco, California, which recommends that I should be re-instated to the above position effective 7 December 1947.
In view of the above and on the basis of the Act “to provide for payment of salaries covering periods of separation from the Government service in the case of persons improperly removed from such service” as shown in Section 6 (b) (2) of the Public Law 623, 80th Congress, approved 10 June, 1948,1 respectfully submit my *216 claim for the total salary, which, has thus became due to .me since the.time my payment had actually been stopped and.until the time I am actually re-instated on the payroll of the above Signal Section, Headquarters 8th Army, APO 343, in J apan, but with exception of the two periods during which I had been compensated by the Government, namely: 1) during my Active Duty with the Army from 8 December 1947 till 24 J une 1948 (copies of pertinent orders are attached), and from 19 August, 1948 till 26 September, 1948 while I was temporarily employed by the Dept, of Air Force, Military Air Transport Service, Army Airways Communication Service, Technical Advisory Group at Gravelly Point, Virginia.
Although the Chief Law Officer recommended my reinstatement since 7 December 1947, which date appears on the Standard Personnel Action Form #50 dated 2 December, 1947 and signed by the Personnel office of the 520 A. A. F. Base Unit, which processed me upon my return from J apan — my actual termination of pay was affected at the end of four hours on 7 November 1947 according to the Final Pay Voucher #82586 dated o/a 3 December 1947 (and U. S. Govt. Check #133,171 signed by F. O. #210,846), since which date I believe I should be paid.
An appropriate consideration of this claim at your earliest convenience would be greatly appreciated for very obvious reasons.
16. On August 9, 1949, the Comptroller General denied plaintiff’s claim as follows:
■ Your claim for compensation alleged to be due for the period November 7, 1947 (four hours) to February 14, 1949, the date you were restored to the position from which you were removed, as an employee of the Department of the Army, Signal Section, Headquarters, 8th Army in Japan, pursuant to the provisions of Public Law 623, approved June 10,1948, 62 Stat. 352, has been carefully examined and it is found that no part thereof may be allowed for the reasons hereinafter stated.
The records show that you were separated August 21, 1947 from the position of Equipment (Dial) Engineer, P-5, at $7,381.50 per annum, because of unsatisfactory performance of duties; thereafter an appeal was made by you to the efficiency rating committee at Headquarters 8th Army, which recommended that the “Unsatisfactory” efficiency rating stand and that you be allowed to remain on the job until the expiration of your employment contract on September 21,1947. The records fur *217 •ther show that you arrived in the United States and were removed from the rolls of the Department of the Army by reason of “Disqualification,” effective December 7, 1947. Your last day of active duty was through 4 hours on September 29,1947, when you were placed on annual leave until 4 hours of November 7, 1947, and you performed no services for the department until you were restored to duty in your former position on or about February 14,1949.
It has been held that while the act of June 10,1948, supra, under which you are claiming, amended section 6 of the act of August 24,1912, 37 Stat. 555, to provide, under certain circumstances, for the payment of salaries covering periods of separation from the Government service in cases of persons improperly separated from such service, it would appear that the act is not applicable in your case, since said act has no retroactive operation to affect cases arising prior to the date of its approval.
I therefore certify that no balance is found due you from the United States.
17. On October 20, 1949, plaintiff appealed again to the Comptroller General:
Deference is made to the “Settlement Certificate” dated 9 August 1949 and signed by “Bobert H. Kelley” in which my claim No. ¿40315 was denied for the reasons which do not appear to be convincing. I, therefore, respectfully request that this claim be reconsidered and, if necessary, the entire case be thoroughly reviewed, as I am sure you may find this claim entirely correct because it is based on the Public Law #623 approved on 10 June 1948.
The second paragraph of the above Certificate refers to “the records” which are not entirely correct. My so called “unsatisfactory performance of duties” have never been proven to be “unsatisfactory,” and it was so found by the Chief Law Officer of the Civil Service Comihission upon his analysis of the case.
I have every reason to believe that the instrument allegedly giving me the “unsatisfactory” efficiency rating which was dated 30 June 1947 may not have been even signed by the individual whose typewritten name ap-Seared on the Civil Service Form #51 shown to me the rst time and only upon my specific request oh 21 August 1947. But even if this individual did sign the above Civil Service Form #51, the document cannot be considered valid and legal because this individual was *218 not my immediate supervisor who could have possessed necessary knowledge about the “performance of my duties,” and above all this individual might have been insane at the time he executed the instrument, as about this time he was under medical care and soon was permanently confined to the Closed Psychiatric Ward of the 861st General Hospital in Tokyo and subsequently was evacuated to the ZI as a hopeless case.
The efficiency rating committee at Headquarters Eighth Army, which recommended that the “unsatisfactory” efficiency rating stand (as quoted further from the same Certificate), was not acted according to the pertinent rules for such procedure laid down by the Civil Service Commission, which was officially reported by me to both the Secretary of the Army and to the Civil Service Commission. These irregularities have never been denied or disputed by those concerned, hence this Committee’s findings likewise could not be considered valid. In fact its recommendations was not followed even by the Headquarters Eighth Army as I was forced out of Japan on 7 September 1947 instead of after 21 September 1947 as was recommended by this Committee.
During the investigation of the case by the Chief Law Officer of the Civil Service Commission the Civilian Personnel Section of the Headquarters Eighth Army did not find anything to substantiate its action of 1947 but continued slandering with irresponsible statements such as that of paragraph #2 of the Chief of the Civilian Personnel Section’s letter of 15 November 1948 addressed to the Civil Service Commission in Washington. The individual who signed this letter allowed further inaccuracies in his letter when he stated that “the officials who were familiar with this case and Mr. Kalv’s supervisors are no longer available in this theatre to furnish sworn statéments.” This statement was not correct, as the number of persons, who were participating in the above mentioned Efficiency Eating Committee’s hearing on 27 August 1947 were still in Japan, and even in Yokohama.
Upon my restoration to duty and my arrival in Japan I was assigned to exactly the same position and place, from which I was removed in August 1947 and shortly afterwards I was given additional duties above those I was required to perform in 1947. Although I personally considered it to be extremely unfair to place me in immediate subordination and close contact with those who in 1947 demonstrated their prejudice against me, I did not protest this, but assumed the duties assigned to me ever since March 1949. Now after the completion *219 of.over 8 months of service in this capacity I was already given by my superiors “very good” efficiency rating. All above, therefore, should be sufficient to realize that this alleged “unsatisfactory performance of duties” was simply fabricated in 1947 in order to terminate my employment in Japan.
The Public Law #623 dated 10 June 1948 in its Sec. 6 (b) (2) states: “Any person who is discharged, * * * who, * * * after an appeal to the Civil Service Commission, * * * is * * * restored to duty, * * * shall be paid compensation at the rate received on the date of ■such discharge * * * for the period for which he received no compensation with respect to the position from which he was discharged * * * less any amounts earned by him through other employment during such period, and shall for all purposes except the accumulation of leave be deemed to have rendered service during such period.”
The case was appealed to the Civil Service Commission on 9 September 1948 (three months after the Public Law #623 went into effect) and on 10 December 1948 (six months after the effective date of this Public Law) the Chief Law Officer stated that the Civil Service Commission recommended my “restoration to the position with the Department of the Army, from which you were removed, effective December 7, 1947.” I was actually restored to my position on 14 February 1949. The Public Law #623 does not state that it is not applicable to the “cases arising prior to the date of its approval.”
Therefore, it is respectfully requested that the statement in the third paragraph of the Certificate that “the act of. June 10, 1948, * * * is not applicable in your case” — be reconsidered.
In view of the fact that both the appeal and the restoration to duty were taken place after the Public Law #623 became effective, the provision of this Law, in my opinion, should be complied with by satisfying my claim for the salary “for the period for which” I “received no compensation with the respect to the position from which” I “was discharged.”
18. On December 1, 1949, the Comptroller General again denied plaintiff’s appeal:
Eeference is made to your letter of October 20, 1949, requesting review of settlement of August 9,1949, which disallowed your claim for compensation for the period beginning with four hours on November 7,1947, to February 14,1949, during which period you were separated *220 from the service. Your claim was disallowed for' the reason that the act of June 10, 1948, 62 Stat. 352, tinder which your claim was asserted, was not retroactive and was applicable only in cases in which the separation took place after the eifective date of the act. In your request for review you recite the facts in your case and argue at length that the act of June 10, 1948, should be applied in which the restoration to duty took place after the date of the act.
In 28 Comp. Gen. 200, it was held by this Office, quoting from the syllabus:
“Under the provisions of section 6 (b) of the act of August 24, 1912-, as added by the act of June 10, 1948, authorizing the payment of compensation for periods during which employees were erroneously removed or suspended without pay from the service, only an employee who was removed or suspended after June 10, 1948, the effective date of the statute, and who otherwise meets the conditions prescribed by said section 6 (b) is entitled to compensation for the period of such removal or suspension for which no compensation was received.”
Accordingly, as your separation from the service took place prior to June 10, 1948, you are not entitled to benefits of the act of that date and the disallowance of your claim was proper.
Upon review the settlement must be and is sustained.
19. Plaintiff was on active duty with the Department of the Army with the rank of captain from December 8, 1947, until June 24,1948, and during that period received military pay and allowances in the amount of $2,077.50.
20. Plaintiff was unemployed from June 24, 1948, until August 19,1948.
21. From August 19,1948, to September 26,1948, plaintiff was employed by the Department of the Air Force in a civilian capacity. During this period the plaintiff received $705.93 in pay. From the time of plaintiff’s separation from duty on December 7,1947, to his reinstatement on February 9, 1949, plaintiff received the amount of $2,783.43 as total income from all sources.
22. On the basis of an annual salary of $5,905.20, plus a 25 percent overseas station differential for the period November 8,1947, through January 1, 1949, and plus a 10 percent overseas station differential for the period January 2, 1949, through February 11,1949, plaintiff would have earned *221 for the period November 8,1947, through February 11,1949, the sum of $9,268.52. On this basis, the amount of recovery would .be $9,268.52, less outside earnings of $2,783.43, or $6,485,09.
■23. On the basis of an annual salary of $5,905.20, without any additional percentage for overseas station differential, plaintiff would have earned $7,494.96 for the period November 8, 1947, through February 11, 1949. On this basis, the amount of recovery would be $7,494.96, less outside earnings of $2,783.43, or $4,711.53.
.Plaintiff was separated effective December 7, 1947. The statement of the final salary payment made to plaintiff as contained in the files of the Department of the Army indicates, however, that such final salary was for the period September 7,1947, through November 7,1947.
, 24. Plaintiff is a preference eligible under section 14 of the Veterans’ Preference Act of 1944, as amended.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is entitled to recover, and it is therefore adjudged and ordered that he recover of and from the United States four thousand seven hundred eleven dollars and fifty-three cents ($4,711.53).

 62 Stat. 1205.

 5 CFR 301.1 to 301.63 (1949 Efl.).